Good morning. May it please the Court. With the Court's permission, I'd like to reserve five minutes of rebuttal time. That will be granted. Thank you. What was the ultimate issue in this case? The ultimate issue is whether or not Glenford Prince stabbed his brother, Isaiah Pereira. Two brothers are fighting. Simple facts. A knife is involved. One of the brothers ends up dead. These are the tragic, yet simple facts of the Government's case. However, through the use of impermissible 404B testimony, the Government transforms those facts into facts that speak to the character of Mr. Prince. Let's talk about that 404B defense, if we can, Ms. McClain. The defense, the central defense was this was an accident, right? Yes. And 404B specifically says that accident, to rebut or to turn away an argument of accident or mistake, evidence of other wrongs or crimes can be admitted. So doesn't the stabbing of Nanciba, am I saying that gentleman's name right? Nanciba, yes. Isn't the stabbing of, and I don't mean over-familiarity by using first names. It's easier, they're both named Prince, yes. So because of Nanciba's stabbing, a jury could rationally say, not on predisposition, but on, oh, it wasn't an accident. What are the chances that you stabbed two brothers by accident? Isn't that right, sort of in the center of 404B? It is in the center of 404B. However, for our purposes in this case, we have to remember the Government was trying to prove second-degree murder. It is of no value whatsoever to prove that it was or was not an accident. And this is why I stated the facts as I did. During an altercation with his brother, Glenford, I'm sorry, Isaiah was stabbed. Whatever we want to call it, right? Outside of it being a mistake or accident, what else could it be? It still comes down to the altercation resulting in a second-degree, possible second-degree murder charge. Why is that the fact that it's a second-degree murder charge? How does that make it irrelevant whether or not it was a volitional act on the part of your client to put the knife in his brother's chest, as opposed to an accident where somehow or other Isaiah fell on it? Because 922, the Virgin Islands statute under which Mr. Prince was charged, only enumerates very limited cases in which first-degree murder operates, right? And so premeditation, deliberation, willfulness, or killing an officer or anyone helping an officer during the course of an investigation, everything else is second-degree murder. So if it so happened, to answer your question, that Glenford in the heat of the moment decided, you're getting on top of my nerves, Isaiah, I'm going to stab you, we would still have the second-degree murder. So we could still have the same trajectory of events leading up to any, whether it's accidental or volitional. You never objected to the evidence that came in on rebuttal. He did not object. That's not a standard of review. You have a plain error of a situation here? Ordinarily, but the error rises to such fundamental egregiousness that it ought to be stricken in this case, the testimony. Nevertheless, if you're to prevail here, you have to show plain error, not just error. And that's quite a hurdle, isn't it? It can be quite a hurdle. The problem is, I mean, there are many failures in this case anyway, right? The trial court failed to give limiting instructions. It's not the trial court's requirement. It might be a thing to do without being requested. But as far as I know, the cases are pretty clear that unless you request it, it's not an error not to charge the reason why 404B is coming in. And you never requested it. It was not requested at the trial. That is correct. Well, where does that leave us with plain error and no request for a limiting charge? I'm not sure where it leaves the court. That's ultimately up to you. But I do know it should not leave the court in a position that prejudices Mr. Prince, as he's currently been prejudiced by the outcome of this trial. Well, we might have one-side cases on the merits. But there is, you know, a reason for a procedure, because it's fundamental. We have to file a procedure for good and proper reasons. It's fundamental. What we're talking about here is the defamation of due process rights. Just because a trial attorney fails to object doesn't mean that any and all objectionable material should come in. That is the job of the trial court. And if that, if the trial court fails to dispense its duty in that regard, then it is up to an appellate attorney before a reviewing court to say, yes, we understand that certain procedural errors were made, but those procedural errors should not run to the, should not prejudice a defendant. Especially in this case, Your Honors, where we're talking about an acquittal. If, you know, ultimately, you know, we ask about what's the fact at issue. The fact at issue, the legal fact is that Glenford Prince never stabbed Nanceeba. Can I just back up for a minute? Yes. Just to be very clear. Do you concede that the standard review here is plain error? Or should it be abuse of discretion? Well, because the judge, for our purposes, because the judge admitted the evidence, we are arguing for an abuse of discretion standard. And what is your reason for that? Because the 404B evidence was admitted erroneously. The judge said, and if I remember correctly, it was around 940s, 950s of the joint appendix. The judge was very clear. You know, it actually, the judge explained to the jurors. So just because the judge gave a curative instruction or limiting instruction, that it transforms this from a plain error to an abuse of discretion? Well, no, because if you look at that portion of the transcript, the attorneys argued vigorously. And the court actually went into recess, and the attorneys said, no, no, no. We cannot have this evidence come in. It's highly prejudicial. It's inflammatory. It's not on the record. There's no conviction here. Why are we bringing this in? And the court said, I don't care. I'm still letting it in. When the mother, Val Myers, testified, the court again gave an instruction after her testimony and said, look, you know, I know you heard some things, but I'm allowing the evidence to, you know, disprove accident or mistake. And so the judge was actively making decisions about what evidence to admit and what evidence to keep out. And the judge admitted this highly prejudicial evidence. And for us, our argument is that that was clearly an abuse of discretion, whether objected to or not. That rises to the level. Even if we are at an abuse of discretion standard here to review your argument, how is your client's substantial rights, if we're under an abuse of discretion standard, harmed when, to some extent, the disability is permissible as rebuttal testimony, and it also came in through a Myers statement to the police. Except Myers' statement was not in evidence. And the government was actually very clear to point that out. I pointed that out in my brief. I made a footnote of it. It was clear that this evidence was not considered by the jury. In fact, Myers was questioned about it on the stand, and she wasn't very clear in her answers. The government got in this evidence when they questioned Glenford Prince, and they said, oh, Glenford, you know you're always doing this, you're always stabbing your brothers. Didn't you stab a brother before, and it wasn't an accident? He's like, I didn't stab anybody. He's like, Isaiah fell on the knife. I never stabbed Sebi. And then the government recalled Non-Seba and said, oh, your brother says he never stabbed you, and then Non-Seba says, yeah, well, actually he did, but at the trial, you know, I lied, so I'm here now to tell the truth. Okay. Now, the fact that the defense, the defense was accident, doesn't that put in issue, whether it's second-degree murder or first, doesn't matter. It doesn't, the fact that the defense is, I didn't do it, it just happened, make relevant the evidence that, yeah, you may well have done it because you claimed accident before, and it's hard to believe two accidents in a row. Your Honor, and this is where we get into the general versus the specific. I don't recall anywhere in the transcript where Glenford Prince says, oh, you know, whether I did it accidentally or not. The government conveniently says, well, we want the testimony to disprove accident, but they don't offer the testimony to disprove volition, right? And we quote Mr. Prince in the presumption of innocence, right? And so Mr. Prince, or he's not guilty, and Mr. Prince says, look, maybe he fell, maybe I stabbed him. It was a fight. It was a fight. In my head, I didn't mean to do it. I don't know what happened, but we're wrestling. He had a knife. I tried to get the next thing I know. He fell on the knife. You know, I'm sure on. He fell on the knife. It's hard to square with, and I stabbed my other brother, too, because, not because I'm a stabber, but because it's a little hard to believe that one guy, by accident, stabs both his brothers at two different points in time. In other words, the idea of accident becomes substantially less believable once you know about it. So the point I'm trying to get you to speak to is you said second-degree murder somehow makes a difference here, and I'm still not following you. You're not clear on that. Excuse me. Claire, could you have three minutes to both sides? Okay. The second-degree murder. I think what we have to be clear on here, Your Honors, and this is precisely the problem that we have, the very difficulty you're having. This was a trial about the stabbing of Isaiah Pereira. The fact that Nanciba might have been stabbed in 2000 was of no consequence to this trial. What the government did was to come to Glenford and say, didn't you stab her brother before? They shouldn't have even been allowed to bring that up because he was acquitted on that case. Set that aside when you say they shouldn't have even been able to bring that up. If it's true, and correct me if I'm wrong, but if it's true that the defense is, I don't know how he got stabbed. I think it was an accident. I think he fell on his knife. If that's the defense, that's what you've got to speak to. If that is the defense, what's wrong with the government saying, don't believe that? But that's not all of the defense. The defense is, I don't know how it happened. It could have been an accident, or maybe during the fight, somehow, I volitionally, unintentionally, however, stabbed my brother. Now, the fact that that wasn't mentioned doesn't mean that that's not one of the possible defenses. And so for the government and the trial court to just decide that this highly inflammatory, and you're sitting here, your honors, this is the problem. Oh, my God, you stabbed another brother before? That's exactly why he can't come in, because guess what? Of course the jury is going to think the same way. Hey, there was a stabbing before of a brother. Oh, so he must have got, no, no, no, there was no stabbing before of another brother. There was an acquittal. And as we know in Dowling, you can't admit, you can admit that evidence, but only if it's to prove a lesser standard and if, you know, you're familiar with the Dowling case. But in this case, that acquittal means so much. It didn't happen. Legally speaking, the stabbing of non-CEBA didn't happen. So it should not have been allowed. I think you just said Dowling says it can't come in. So we're past that, right? Dowling does say that, but Dowling does not necessarily apply to our case in as much as we are trying to prove the same thing. This is not a case where, oh, I'm admitting prior bad acts from, you know, a former, you know, former incident, and here we are, you know, slightly different facts, but we know this is this bad actor. We're talking about the same sort of facts. Oh, we're admitting a stabbing of a brother from before in a case dealing with a stabbing of a brother now. It's just, I mean, that is where the impermissibility adheres. You cannot say, well, something that didn't happen legally, but happened to be the same set of facts, should be admitted to prove the same set of facts in another case. Okay. Thank you, counsel. Good morning. May it please the Court, my name is Tiffany Monrose, and I represent the government of the Virgin Islands, and we request that you affirm the decision of the appellate division for the reasons set forth in our brief. Can you articulate the 404 purpose this evidence serves, and explain how it serves each of your articulated purposes, that he stabbed a brother before, how does that show that he stabbed a brother this time? Yes, in this case the... Number 404B, you've got to articulate that. Yes, Your Honor. In this case, the proper purpose for which Noceva's testimony was offered was to show the absence of mistake, accident, or intent, and in this case, the prior stabbing involving Noceva was relevant in that the defendant was not only charged with second-degree murder as the appellant stated, he was also charged with unlawful possession of a dangerous weapon during the commission of a crime of violence and assault in the third degree. The evidence was not unlike the evidence that was offered in other cases before this Court. Most recently, the case... You proved that he stabbed a brother before, so he must have stabbed a brother this time, the brother didn't fall on his own knife. Yes, in the past this Court has recognized that evidence of similar acts may be used to show the absence of mistake, such as in the case of United Search V. Donahue, which was decided this year, 2012. How did this prove an absence of mistake, by showing that years ago he stabbed another brother? It would demonstrate that the appellant has engaged in conduct that's not... I'm sorry, the absence of mistake requires us to show that the defendant did not previously... Excuse me, the Court has recognized that... The trial court allowed the evidence to come in because the defendant attempted to say that Noceva was not stabbed previously, and so the government offered it for the purpose to rebut that allegation during his case-in-chief, yes.  I wrote it down, because I read your closing statement, belies your argument here to this Court, because in closing, the only time you mentioned the stabbing of a prior brother on a prior occasion is when you said this, the only brother in that house that has a conviction for felony that has been tried for stabbing with a knife, and that is in this Court, and yet another stabbing is Glen Ford Prince. That's what you said. In other words, in effecting, not even effecting, you actually said he stabbed another brother before he stabbed a brother here. You never argued any 404 lack of intent, mistake, anything like that, in the requirements of 404-8. I would ask the Court, I would refer the Court to page 10 of the appendix in which the appellate division noted that the government at trial did indicate that it was presenting Noceva's testimony about Glen Ford's prior stabbing to rebut the testimony of the defendant that he never stabbed his brother and that he didn't know what his brother was talking about and only one brother was stabbed, and that can be found on page 10 of the appendix. That's the appellate division? Yes. I'm talking about what you argued to the jury which resulted in this conviction, and the only argument you made to the jury was not 404-B. You argued he stabbed another brother before, ladies and gentlemen of the jury, you then should conclude he stabbed a brother at this time, he didn't pull out his knife. You didn't argue lack of intent, motive, you know, the 404 prerequisites. How do you square that statement to the jury with your argument to the Court? I'm sorry, you're saying that while the government mentioned it at trial, it does not square that the information was available, that this information was presented to the jury? I'm saying you're arguing to us that this evidence comes in under 404-B. Fine. But that's not what you did when you summed up to the jury. The only time you mentioned the prior stabbing to the jury is when you said the only brother in that house that has a conviction for felony and that hasn't tried for stabbing with a knife, and that is in this Court, and yet another stabbing is Glenn Pritz. He said he stabbed another brother before. The only person in the courtroom is the defendant, so he must have stabbed another. That's the only logical argument, the only logical conclusion you could take from the argument you made to the jury. You did not make a 404-B argument to the jury that because of whatever the argument is, this was not a mistake. You should take this as a lack of mistake, that it was an intentional act as it shows, that because he stabbed someone before, it's not a mistake that he stabbed the victim in this case, which would have been a classic 404-B argument, whether they buy it or not. But that's not the argument you made. I referenced to the Court just now that I was referring to page 10 where the government made its argument, not just merely in closing, but during the course of the trial. I'm not saying during the trial. You don't address the jury except during closing or opening statements. I'm telling you what you told the jury is the reason for that you should consider the prior standing to show that he stabbed the brother in this case. But the jury was instructed after Valerie Meyer's statement as to the limiting purpose for the testimony. And I would also like to add that prior to the second day of trial, which was the February 16th, the start of the February 16th day of trial, the Court openly asked all parties whether or not they agreed to the limiting instruction that was going to be given to the jury, and all parties agreed, including Attorney Jessel Bethel, who was the attorney of record for Glenford Prince. Thereafter, the Court gave the instruction that mirrored the language of 404-B, and it specifically indicated that it... Was that part of the final jury charge as well, the 404-B instruction? I don't recall if it was part of the final 404-B instruction, but I would submit that the appellate division did cite a number of cases which indicate that it was not plain error for a court not to give a limiting instruction when not requested by the defendant. And in this, the appellant, Glenford Prince, and in this case, the Court gave the instruction without the defendant's request, and even after... Even prior to giving the instruction, he got the Glenford Prince attorney's approval on the instruction as given, and there was no objection as to the language or the basis of the Court's instruction. So I would submit that the Court gave the parties an opportunity to say yea or nay and whether or not they agree with the instruction, gave the instruction, and told the jury the limiting purpose. And based on the number of cases that were cited by the appellate division, I would submit that it was not plain error for the Court to repeatedly give instructions after Noceva's testimony. All right. Well, that brings us to another point. What's the standard of review here? Is it plain error, or is it abuse of discretion? Well, in my brief, I said abuse of discretion. Absolutely. Are you backing off that now, or do you just want to know what your position is? Well, I was reviewing my notes and my brief, and I was trying to find the citation to the record in which, you know, there may have been an objection by the defendant, but I did not see that there was an objection by the defendant in my notes anywhere, and I would submit that in that circumstance, plain error would be the standard. And I would submit to this Court that in the decision that was decided this year, United States v. Berrios, which was decided April 10, 2012, this Court held that where evidence is improperly admitted, if the Court deems this evidence to be improperly admitted, reversal is not required where it is highly probable that the error did not contribute to the judgment. And there is no need to disprove every possibility of prejudice, and we can affirm for any reason supported by the record. Is that your best argument, that there's no prejudice here? I mean, if it's the case that this was admitted in error, you'd have to acknowledge, wouldn't you, that this is highly damaging evidence. I mean, your argument, as I understand it, is sure it's highly damaging, but it's not unfair because the rules specifically allow us to say the chance that this is a mistake is substantially reduced if you know there was an earlier event that's very similar, so that accident is not a likely explanation for two of these happening. Am I right? Have I got your argument right? Yes, and I would ask you to. But your argument isn't, and I want to see how it could be, that, well, there's no real substantial right here affected, there's no prejudice here, because this is really damning evidence, isn't it? And it's the centerpiece of your case. I would submit it's prejudicial evidence, but I would draw the Court's attention to the advisory committee notes, the 403, which states that unfair prejudice within its context means undue tendency to suggest a decision on an improper basis, commonly though not necessarily an emotional one. Any evidence suggesting guilt is prejudicial to a defendant, and obviously 403 is not intended to exclude all such evidence. We get that, but the point that you're being asked about is, you were being asked is it plain error or is it abuse of discretion, and it sounded to me like you were going in your argument to say, well, in the end there isn't really prejudice here, but maybe I misunderstood what you were saying. No, I would say that there isn't substantial, that the probative value is not substantially outweighed by the prejudice in this case. And I believe in the decision of United States v. Donahue, which was decided by this year and written by Judge Chigueras, in which a defendant was charged with several counts of bank fraud, intent to defraud, money laundering, and false statements. The trial court allowed three witnesses to testify regarding uncharged conduct by Defendant Donahue, which was substantially similar to conduct charged in the indictment. And the court held that it was not an abuse of discretion and that it was relevant for the purpose of showing that the defendant had employed a common scheme or plan and that it was not substantially prejudicial because it aided the jury in understanding the defendant's case. So if we accept that there is a proper 404B basis for the evidence, do you have a problem if the 404B basis was not argued but a propensity argument was made? That's what I think, I don't want to speak for him, but I think Judge Cowen is asking you, you know, even if you got a 404B argument, if you made a propensity argument, don't you have a problem? Well, I don't think that it would be helpful to the government's case if we make a propensity argument in a 404B. Yes, from the language that he read in the transcript, it sounded along those lines, but I would also like to refer the court back to the case of United States v. Berrios where the court can find on any basis in the record that the error, if any, was harmless. Well, how can you say that this evidence was harmless, even if there is other evidence sufficient to convict? I mean, how can you say this is a harmless error? It's error, but it didn't make any difference. How can you say that when you're dealing with the exact same facts in another setting as this one with a knife? How can we say, I should say, how would you word it for us to say, in your right opinion, say this error was harmless because there was other evidence sufficient to convict, even if there wasn't this evidence? It wouldn't have made any difference to a jury. It would not have made any difference. Why? Tell me how I would say it. In this case, as the court noted during the appellant's oral argument, and I'm trying to phrase this as close as the court would write it, Valerie Meyer's testimony brought in the information that Noceva's testimony was offered for the same purpose, which was that previously, Glenford Prince told her that he had stabbed Noceva on a prior occasion. I don't know that the testimony of Noceva contributed overall to the conviction of the appellant, given the overwhelming amount of evidence, and I think that's the consideration that the court has to have, the overall evidence in the case. And while my brief did not speak to all the other evidence in the case, to demonstrate why it was harmless. I think we're back to the there was no prejudice, that's why it's harmless, and that's an awful tough road to hoe. It seems like your argument in briefing in here sort of has to be, not that it's harmless, but that we really were making a 404B argument, that the judge instructed on 404B, and it was proper under 404B, and even if we were inartful in our closing, it was 404B. If that's not your argument, I don't know what argument you've got. No, that is the argument that the government is making to this court. I was just, you know, in the alternative saying that if the court was, because the court had asked about the prejudice and harmless error, certainly the government has and the court has. It's tough to make the case that something that you sort of put front and center in, in your presentation to the jury, should really be viewed as a non-event now, don't you think? I mean, you made the non-ceiba stab in you, I mean the government, right? Yes. Not you personally, the government. A big deal. I'm not sure how you can come in here now and say, yeah, well, even if it was wrong, never mind, it was no big deal. I mean, you all made it a big deal. Well, actually the government was responding to Glenford Prince's testimony in his case in chief in which he indicated that it was a mistake to stab Isaiah and that he never stabbed any of his brothers. And the government had evidence to offer to show that that, in fact, was not actually accurate and they chose to present Naciba's testimony to rebut that information. So the hard question is, how did the government present it and how was the jury instructed to understand and take it, right? Yes, and the court tracked its language on page 809 of the transcript with the language in 404B. And as I indicated previously on page 805 of the appendix, he asked all of the parties to approve the instruction that would be given. Attorney Bethel agreed to that instruction and thereafter the instruction was given. And, you know, as indicated in the appellate division's decision, the appellant's failure to request that or the court's failure to give repeated instructions does not amount into reversible error. And I would ask this court to so find. Well, if it were under plain error, how can the defendant act on one occasion the evidence that he intended to act a certain way on another completely different occasion serving different people without drawing impermissible inferences? Well, this court so find in other cases such as United States v. Andijar and United States v. Stanley. And in those cases, well, specifically in Andijar, the court was looking at whether or not the defendant was charged with failure to file tax returns. He had 22 counts of failure to file tax returns and one count of bank fraud. In that case, the trial court permitted the defendant's history of failing to file taxes to come in to evidence because it demonstrated willfulness and willfulness was an element of the charged crime. And so the court held, this court held that it was not an abuse of discretion to allow the prior history to come in and it was relevant on the contested issue of willfulness and the importance outweighed any prejudicial impact. Thank you, counsel. Counsel, again, when the panel says you, we mean you. No, I understand. Thank you. Thank you. I realize that earlier I failed to introduce myself. Dolais McQueen on behalf of Glenton Prince, the appellant. Basically in this case, what happened is the government could not get a conviction. The court is right to ask, what other evidence would there have been to substantiate the charge against Mr. Prince with regards to Isaiah? Nothing. And so the government goes out and decides, come hell or high water, we're going to get this non-CEBA testimony and we're going to get it in. This testimony first came to the government's attention when Val Myers gave a statement to the police. And from there it was clear the government had an intention that somehow or other they were going to get this information out, bring it up in this trial, and use it to prove that Glenford Prince intended to kill his brother. Counsel, the remedy you're seeking is to send it back for new trials. Actually, if we could vacate the conviction, I'd be much happier with that. But hey, a retrial is fine too. Well, let me ask you about your argument. In your brief, it appears that you're saying that the trial court's error was in admitting non-CEBA's rebuttal testimony. Yes. And is that the argument you're making, that the trial error that you're contesting, that what you contest is error, and what you're pinning your arguments on is the admittal of non-CEBA's rebuttal testimony? That and any other errors the court might have committed. When you say that and any other errors, we've got to go with what you're arguing. And as I read your brief, that appears to be your argument, that the admission of non-CEBA's, and I apologize again to him if I'm saying his name wrong, that the admission of his rebuttal testimony is the error that you complain of. If there's something else, then I need to know about it, and I need to know where you've made the argument in your brief. Okay. I'm not entirely sure I'm clear on the question. Let me try again. I understand your argument to be that the court erred in admitting non-CEBA's rebuttal testimony. That is the argument you've made, as I see it in the brief. If you're making some other additional argument, if there's other things that you say are error that we should be paying attention to, I'd ask you to state it and state where it's in your brief. Okay. As it relates to the error of admitting non-CEBA's testimony, yes. That is the primary basis of our argument. That was unobjective by the defense. Yes. I was going to say there was the colloquy, but that was a different part of the transcript. That testimony is unobjective, too. But nevertheless. Not that I can recall. But I think there was a very vigorous dispute over this whole line of questioning and over the whole non-CEBA testimony coming in, and this is why the judge gave the limiting instructions. You know, they had two serious sidebars where they were like, look, you know, Jesse Bethel was like, look, it didn't happen. There's no conviction here. Why are we even mentioning this? And there was a limiting instruction. There was a limiting instruction. But it's not enough to cure the error, right? Because at the end of the day. When you say the error. The error of admitting non-CEBA's testimony in the first place, because what non-CEBA's testimony did in essence was to say that, you know, that Glenford is guilty because he's repeated the same crime. That's in essence what it says. And so. Could it be that he's saying he's guilty because it's hard to believe an accident when an accident under very similar circumstances was alleged to have occurred before. One time you could believe maybe an accident. Second time, harder to believe accident. Your Honor, that there is the problem. To keep saying it happened before. It didn't happen before. The jury was entitled to think maybe it did exist. Because Dowling tells us, doesn't it, that even if there's not a conviction. Even if there wasn't proof beyond a reasonable doubt. If there's evidence of the prior wrong. A jury is allowed to think about that. If there's evidence of the prior wrong. When there's a lower standard of proof. Or when there's a likelihood that the defendant was the actor who committed the act that is charged. But here, what we have basically is a retrial of the non-CEBA. And when you read the testimony, you'll see it's a retrial of the re-litigating of the non-CEBA issue. The government pretty much says to non-CEBA, he stabbed you, didn't he? Yes, and that's why you're here to tell the truth, aren't you? And non-CEBA is like, I don't know. And they start asking, did you get charged for perjury in the other case? They start to re-litigate this entire matter in order to get some type of juror conviction that then leads to the inexorable conclusion that yes, I did get charged. Thank you.